E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
KATHERINE M. HIKIDA (CA State Bar No. 153268)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2285
    Facsimile: (213) 894-7819
    E-mail: katherine.hikida@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY, CALIFORNIA,<br><br>    Defendant. | Case No. 2:23-cv-05165<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT**

Plaintiff, the United States of America, alleges as follows:

**I.  INTRODUCTION**

1.    The United States brings this action to enforce Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§12131–12134, and its implementing regulation, 28 C.F.R. Part 35, against Los Angeles County, California, acting through its Registrar-Recorder. Los Angeles County is responsible for selecting and providing accessible facilities to be used as polling places or vote centers for federal,

state, and local elections and for overseeing the County's voting program. Los Angeles County has violated the ADA by failing to provide a voting program that is accessible to persons with mobility and vision disabilities.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12133. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claims occurred in the Central District of California, a substantial part of property that is the subject of the United States' action is situated in the Central District of California, and Defendant is located in the Central District of California.

## III. PARTIES

4. Plaintiff is the United States.

5. Defendant Los Angeles County, California, including its respective departments, agencies, and other instrumentalities, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

## IV. FACTUAL ALLEGATIONS

6. Los Angeles County, through its Registrar-Recorder (hereinafter, collectively, the "County"), is responsible for the administration of federal, state, and local elections, including the selection of facilities to be used as polling places or vote centers. The County is also responsible for assessing and ensuring the physical accessibility of each polling place facility.

7. In April 2016, the United States opened an investigation of the County's voting program to assess compliance with Title II. The United States conducted

architectural surveys of eighty-eight polling places used by the County during the June 7, 2016 primary election.

8. Of the eighty-eight polling places that the United States surveyed in the June 7, 2016 election, only fifteen complied with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design, while the remaining seventy-three sites were non-compliant. Based on the June 2016 surveys and other information, the United States informed the County on September 13, 2016, that it was in violation of Title II by denying voters with disabilities an equal opportunity to participate in the County's voting programs, services, and activities, including by failing to select facilities to be used as polling places that are accessible to persons with disabilities.

9. In September 2016, under California Senate Bill 450, counties could move to replace polling places with vote centers. Beginning with the March 3, 2020 election, Los Angeles County voters can cast a ballot at any vote center in the County. Voters may also vote using a vote-by-mail ballot.

10. During the March 3, 2020 election, the United States conducted architectural surveys of 106 of the more than 975 vote centers used by the County. The United States found that all 106 vote centers surveyed were non-compliant with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design.

11. Each of the surveyed vote centers had non-compliant elements or features, including, for example, a lack of van accessible parking; locked gates, wide gaps, abrupt level changes, and excessive cross slopes on designated accessible routes; ramps with steep running slopes; entrances and/or exits that were too narrow, lacked level landings, or had high thresholds; interior routes that had protruding objects; and voting areas with narrow routes and a lack of adequate turning space at voting machines.

12. During the November 3, 2020 general election, the United States surveyed an additional sixty-five of the 750 vote centers used by the County to determine if they

were compliant with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design. Each of the surveyed vote centers had non-compliant elements or features, including, for example, a lack of van accessible parking; wide gaps, abrupt level changes, and excessive cross slopes on designated accessible routes; ramps with steep running slopes; entrances and/or exits that were too narrow, lacked level landings, or had high thresholds; and interior routes that had protruding objects; and voting areas with narrow routes.

13. During the November 2020 general election, the United States also surveyed ballot drop boxes at seven vote center sites. Four of the ballot drop boxes had non-compliant elements or features, including, for example, the lack of an accessible route from the public sidewalk to the ballot drop box and the lack of sufficient or level ground space in front of the ballot drop box.

14. During the November 8, 2022 general election, the United States surveyed fifty-two of the 642 vote centers used by the County to determine if they were compliant with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design. Each of the surveyed vote centers had non-compliant elements or features, including, for example, a lack of van accessible parking; wide gaps, abrupt level changes, and excessive cross slopes on designated accessible routes; ramps with steep running slopes and without the required handrails; entrances and/or exits that were obstructed or too narrow, lacked level landings, or had high thresholds; interior routes that had protruding objects; and voting areas with narrow routes.

15. During the November 2022 general election, the United States surveyed ballot drop boxes at ten vote center sites. Six of the ballot drop boxes had non-compliant elements or features, including, for example, the lack of an accessible route from the public sidewalk to the ballot drop box and the lack of sufficient or level ground space in front of the ballot drop box.

16. The County's vote centers include facilities that the United States identified in its September 13, 2016 letter as non-compliant with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design. The County continues to use such facilities in federal, state, and local elections, without providing a temporary or permanent measure to correct the non-compliant features.

17. For example, the County re-used the First Church of the Nazarene in Pasadena in the March 2020 primary election, even though, *inter alia*, the designated accessible parking space lacked signage and did not have an adequate minimum width access aisle or the required level surface; and exterior routes to the vote center entrance included abrupt changes in level, and slopes that exceeded the maximum requirements.

18. The County also re-used the Valley Plaza Recreation Center in North Hollywood in the March 2020 primary election. But the County did not address non-compliant features of the accessible route that the Department had identified in 2016.

19. The County also re-used the Downey Elks Lodge #2020 in Downey in the March 2020 primary election. At that location, the County corrected the noncompliance we identified in the 2016 election (a wire across the floor in the route in the voting area) but introduced a number of new noncompliant elements by changing the entrance to one that included steps.

20. The County continued to use the Imperial Courts Recreation Center as a vote center in the November 2022 general election without the necessary measures to correct its non-compliant features. The United States had identified the Imperial Courts Recreation Center as non-compliant in its list of the 106 inaccessible vote centers which the United States provided to the County on July 31, 2020.

21. The County's curbside voting program is also inaccessible to people with disabilities. During the March 2020, November 2020, and November 2022 elections, some vote centers lacked signage indicating curbside voting was available. Some locations had a sign but provided no telephone number for contacting poll officials. And

even where signage and telephone numbers were provided, the County did not provide a way for a voter with a disability without a cell phone to alert election officials inside the polling place that they were waiting outside to vote. The County generally did not post staff to observe the need for curbside voting.

22. At least one voter with disabilities complained to the Department of Justice that she had difficulty accessing the County's curbside voting system. D.G., a voter who uses a wheelchair, went to vote at a polling place located at a senior facility on Devonshire Street in Chatsworth, California, within Los Angeles County, in the August 2019 special election.

23. Although a curbside voting sign was posted in front of the parking area at the Devonshire Street polling place, no polling official or staff were outside the facility to identify or assist curbside voters. The County had not provided a buzzer or other mechanism by which D.G. could alert the polling staff that she wished to vote curbside. D.G. was able to vote only because a family member who happened to accompany her was able to enter the polling place, wait in line and register for D.G., bring D.G.'s driver's license inside to have the polling staff check identification, bring a ballot outside for D.G. to vote, and finally bring the completed ballot inside the facility to the polling staff. D.G.'s family member also had to complete the ballot for D.G. because D.G. needs a stable surface to write on and the polling staff did not provide a clipboard. During that entire voting process, no polling staff or official from that polling place ever assisted D.G. in curbside voting. D.G. reported feeling dismayed and frustrated by her treatment at the polling place and that she felt as if she had lost her freedom to vote privately and independently like everyone else.

24. On May 16, 2023, the United States issued a Letter of Findings to the County pursuant to 28 C.F.R. § 35.172. In that Letter, the United States advised the County of its findings about inaccessible vote centers from the March 2020, November 2020, and November 2022 elections, inaccessible ballot drop boxes from the November

2020 and 2022 elections, and the inaccessible curbside voting system. The United States advised the County that its use of physically inaccessible vote centers and its curbside voting system violated Title II.

25. All conditions precedent to the filing of this Complaint have occurred or been performed. 28 C.F.R. Part 35, Subpart F.

## V. DEFENDANT COUNTY'S VIOLATIONS OF TITLE II OF THE ADA

26. The United States re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-25 above.

27. Defendant County excludes qualified individuals with a disability from participation in or denies them the benefits of the County's voting services, programs, or activities, or subjects them to discrimination, on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35, by, *inter alia*:

    a. affording qualified individuals with disabilities an opportunity to participate in or benefit from the County's voting services that is not equal to that afforded to nondisabled individuals, in violation of 28 C.F.R. § 35.130(b)(1)(ii);

    b. providing a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, in violation of 28 C.F.R. § 35.130(b)(1)(iii);

    c. limiting qualified individuals with disabilities in the enjoyment of the voting rights, privileges, advantages, or opportunities enjoyed by nondisabled individuals, in violation of 28 C.F.R. § 35.130(b)(1)(vii);

    d. selecting facilities to be used as polling places and voting centers that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination, or that have the purpose or effect of defeating or substantially impairing the accomplishment of

the objectives of the service, program, or activity with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(4);

      e.    failing to administer the County's voting services, programs, and activities in the most integrated setting appropriate to the needs of persons with disabilities, in violation of 28 C.F.R. § 35.130(d);

      f.    subjecting qualified individuals with disabilities to discrimination because the facilities used in the County's voting program are inaccessible to or unusable by individuals with disabilities, in violation of 28 C.F.R. § 35.149; and

      g.    failing to operate the County's voting program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities, in the most integrated setting appropriate, in violation of 28 C.F.R. §§ 35.150 and 35.151.

28. The individual referenced above, and others, have been and continue to be harmed and aggrieved by the County's ADA violations.

## VI.   RELIEF REQUESTED

WHEREFORE, the United States requests that the Court enter an ORDER that:

A.    Grants judgment in favor of the United States and declares that Defendant's actions violate Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35;

B.    Enjoins Defendant, its agents and successors in office, and all persons acting in concert with Defendant from failing or refusing promptly to comply with the requirements of Title II of the ADA and its implementing regulation;

C.    Orders Defendant, its agents and successors in office, and all persons acting in concert with Defendant promptly to develop a plan, within 30 days of this Court's order, to remedy the demonstrated violations of Title II of the ADA and its implementing regulation, and to fully and completely remedy the violations; and

D.    Orders such other appropriate relief as the interests of justice may require.

Dated: June 29, 2023

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division

*/s/ Katherine M. Hikida*
KATHERINE M. HIKIDA
Assistant United States Attorney
Civil Rights Section, Civil Division

Attorneys for the Plaintiff
UNITED STATES OF AMERICA