E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
KATHERINE M. HIKIDA (State Bar No. 153268)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2285 | Facsimile: (213) 894-7819
    E-mail: katherine.hikida@usdoj.gov

Attorneys for Plaintiff
United States of America

DAWYN R. HARRISON, County Counsel
PETER BOLLINGER, Assistant County Counsel
EVA CHU, Senior Deputy County Counsel
(SBN 235356)
EChu@counsel.lacounty.gov
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-0809

CHRISTOPHER PELHAM (BAR NO. 241068)
JACQUELINE C. KARAMA (BAR NO. 311120)
GRACE PARK (BAR NO. 329056)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
christopher.pelham@nortonrosefulbright.com
jackie.karama@nortonrosefulbright.com
grace.park@nortonrosefulbright.com

Attorneys for Defendant
Los Angeles County, California

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, CALIFORNIA,<br><br>Defendant. | Case No. 2:23-cv-05165-FLA (MRWx)<br><br>**JOINT RULE 26(F) REPORT**<br><br>Scheduling Conference: September 29, 2023<br><br>Honorable Fernando L. Aenlle-Rocha<br>United States District Judge |

**A.    STATEMENT OF THE CASE**

<u>United States' Summary</u>

The United States contends that Defendant Los Angeles County, California ("Los Angeles County"), has violated Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35, by failing to provide a voting program that is accessible to persons with mobility and vision disabilities. Los Angeles County, through its Registrar-Recorder, is responsible for the administration of federal, state, and local elections, including the selection of facilities to be used as polling places or Vote Centers. Los Angeles County is also responsible for assessing and ensuring the physical accessibility of each polling place facility.

In April 2016, the United States opened an investigation of Los Angeles County's

voting program to assess compliance with the ADA. The United States conducted architectural surveys of eighty-eight polling places used by Los Angeles County during the June 7, 2016 primary election. Of the eighty-eight polling places that the United States surveyed in the June 2016 election, only fifteen complied with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design, while the remaining seventy-three sites were non-compliant.

Based on the June 2016 surveys and other information, the United States informed Los Angeles County on September 13, 2016, that it was in violation of Title II by denying voters with disabilities an equal opportunity to participate in Los Angeles County's voting programs, services, and activities, including by failing to select facilities to be used as polling places that are accessible to persons with disabilities. Thereafter, the United States proposed a settlement agreement and began settlement negotiations with Los Angeles County, through its counsel.

During the March 3, 2020, November 3, 2020, and November 8, 2022 elections, the United States surveyed a total of 223 Vote Centers and found that all of the Vote Centers surveyed were non-compliant with Title II, its regulation, and the applicable 1991 and 2010 ADA Standards for Accessible Design. During the November 2020 and November 2022 elections, the United States also surveyed ballot drop boxes at several vote center sites and found non-compliant elements or features. The United States found Los Angeles County's curbside voting program is also inaccessible to people with disabilities as discussed in the United States' Complaint. ECF No. 1.

On May 15, 2023, the United States issued a Letter of Findings to Los Angeles County pursuant to 28 C.F.R. § 35.172. In that Letter, the United States advised Los Angeles County of its findings about inaccessible Vote Centers from the March 2020, November 2020, and November 2022 elections, inaccessible ballot drop boxes from the November 2020 and 2022 elections, and the inaccessible curbside voting system. The United States advised Los Angeles County that its selection and use of physically inaccessible Vote Centers and its curbside voting system violated Title II.

Defendant's Summary

Los Angeles County denies the allegations in the Complaint.

Los Angeles County is the largest local voting jurisdiction in the United States, and is home to more than 5.6 million registered voters residing across 4,100 square miles, including 88 cities and unincorporated areas. As Los Angeles County elections official, the Registrar-Recorder/County Clerk ("RR/CC") is responsible for administering all elections within Los Angeles County (including local, state, and federal elections). In carrying out its duties, RR/CC must not only comply with applicable federal laws (such as the ADA), but also state law, particularly the California Voter's Choice Act ("VCA") (Cal. Elec. Code § 4005 *et seq.*). The VCA, which became fully effective in the County in 2020, replaced the former polling place model with the current Vote Center model for elections in Los Angeles County. The VCA, among other provisions:

- Requires that California voters be able to vote by mail, by having the elections official mail every registered voter a vote-by-mail ballot, which enables the voter to return the ballot by mail or by dropping the ballot off at a secured Los Angeles County ballot drop box or Vote Center, as early as 28 days before each Election;

- Allows California voters to cast a ballot at any Vote Center of their choice in Los Angeles County, with an expanded in-person voting period of up to 10 days before each election, rather than allowing voters to vote only at one designated polling place and on the day of the election;

- Requires that Los Angeles County, starting 10 days before each election, provide one Vote Center for every 50,000 registered voters and then, starting on the Friday before each election, provide one Vote Center for every 10,000 registered voters;

- Requires Counties (like Los Angeles County) administering elections under the VCA's model to "draft and adopt a detailed plan through an open,

4

public process";[1] and

- Requires that Los Angeles County "hold education workshops with community groups, including organizations that assist voters with disabilities and language minority communities" and establish advisory committees including a Voting Accessibility Advisory Committee comprised of voters with disabilities, to provide input on voting and Vote Center locations for voters with disabilities.[2]

Due to these requirements under the VCA, during every Countywide election, RR/CC operates approximately 600 Vote Centers. This means RR/CC has to locate and screen approximately 1,500-3,500 sites for each Countywide election in order to identify a sufficient number of suitable Vote Center locations. RR/CC has also consistently exceeded the minimum threshold of Vote Centers in Countywide elections to ensure that voters have as many Vote Center options available to them as possible. While the majority of these Vote Centers occupy government (including County-owned) property such as libraries, city halls and schools, approximately 30% of the sites are provided by non-governmental parties such as private individuals, businesses, churches, and community organizations. In identifying these sites, Los Angeles County must not only satisfy the above statutory ratio (of Vote Centers per registered voters), but also ensure that certain communities in Los Angeles County (e.g. low income communities, language minority communities, low vote turn out communities, geographically isolated communities) do not lose access to geographically-accessible Vote Centers per the requirements of the VCA.

RR/CC's Vote Center assessment and recruitment process has undergone a number of changes since the VCA was passed in 2016. Among other improvements, RR/CC:

---

[1] https://www.sos.ca.gov/voters-choice-act/more-days-more-ways
[2] Id.

5

- Since the passage of the California Voting Accessibility for the Elderly and Handicapped Act in 1984, the RR/CC has surveyed its voting locations utilizing survey instruments issued by the California Secretary of State (SOS) (pursuant to California Elections Code 12280). In 2019, the RR/CC began using the survey issued by the SOS, which was revised in collaboration with the U.S. Department of Justice. The RR/CC currently expands on the SOS-approved tool to include enhanced data collection points for its surveyors;

In 2016, the RR/CC began implementing mitigations at polling places. Leading up to the March 2020 Presidential Primary Election, in conjunction with the transition to VCA model, the RR/CC enhanced its mitigation plan for addressing barriers to Vote Center accessibility. In 2021, in time for the Gubernatorial Recall Election, the RR/CC further refined its mitigation process to allow for greater control and more accurate descriptions of mitigations. The RR/CC is currently implementing an even more robust enterprise-wide solution, which will allow for site-specific pictures of mitigations among other enhancements.

During the March 2020 Presidential Primary Election, and after extensive testing and community involvement, the RR/CC implemented, on a Countywide basis, the Voting Solutions for All People (VSAP) experience, a new voting system which includes the use of Ballot Marking Devices (BMDs) at Vote Centers. The BMDs allow for all voters, without regard to ability, to use the same voting devices and to vote privately without assistance from election workers, family members, or others. The design and features of the BMD allow voters to customize their user experience to address physical, cognitive, visual, and other disabilities. The BMD also allows voters to utilize and pair their own assistive technology to assist in their voting experience. The audio features allow for toggling between audio and screen reading, and changing the speed of the audio. Additionally, Los Angeles County provides curbside voting at every Vote Center location for voters who wish to cast a ballot in-person outside the Vote

Center.

Los Angeles County denies the United States' allegations that it has "failed to provid[e] a voting program that is accessible to persons with mobility and vision disabilities." Los Angeles County believes that it has worked diligently and vigorously, particularly within the recent framework of the VCA, to accommodate County voters of all backgrounds and abilities.

**B.   SUBJECT MATTER JURISDICTION**

The parties agree that this case presents a federal question. The claims in this action arise under the ADA.

**C.   LEGAL ISSUES**

The United States claims that the Los Angeles County violated the ADA, through its Registrar-Recorder, by selecting and using inaccessible Vote Centers and an inaccessible curbside voting system. Los Angeles County denies those claims. The parties submit that the following are key legal issues:

1. Whether Los Angeles County excludes qualified individuals with a disability from participation in or denies them the benefits of Los Angeles County's voting services, programs, or activities, or subjects them to discrimination, on the basis of disability, in violation of Title II of the ADA, 42 U.S.A. § 12132, and its implementing regulation, 28 C.F.R. Part 35, by, *inter alia*:

    a.   affording qualified individuals with disabilities an opportunity to participate in or benefit from Defendant's voting services that is not equal to that afforded to nondisabled individuals, in violation of 28 C.F.R. § 35.130(b)(1)(ii);

    b.   providing a qualified individual with a disability with an aid, benefit, or service that is not effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, in violation of 28 C.F.R. § 35.130(b)(1)(iii);

7

      c.    limiting qualified individuals with disabilities in the enjoyment of the voting rights, privileges, advantages, or opportunities enjoyed by nondisabled individuals, in violation of 28 C.F.R. § 35.130(b)(1)(vii);

      d.    selecting facilities to be used as polling places and Vote Centers that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination, or that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(4);

      e.    failing to administer Los Angeles County's voting services, programs, and activities in the most integrated setting appropriate to the needs of persons with disabilities, in violation of 28 C.F.R. § 35.130(d);

      f.    subjecting qualified individuals with disabilities to discrimination because the facilities used in Los Angeles County's voting program are inaccessible to or unusable by individuals with disabilities, in violation of 28 C.F.R. § 35.149; and

      g.    failing to operate Los Angeles County's voting program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities, in the most integrated setting appropriate, in violation of 28 C.F.R. §§ 35.150 and 35.151.

2. The appropriate remedies, including injunctive and declaratory relief, that will redress the ADA violations.

3. Whether the United States has standing to bring this suit against Los Angeles County under Title II of the ADA.

4. Whether the United States' claims against Los Angeles County are barred by the applicable statute of limitations.

5. Whether the United States' claims against the County are susceptible to

summary judgement or partial summary judgment.

**D.   PARTIES, EVIDENCE, ETC.**

The parties to this case are Plaintiff the United States of America and Defendant Los Angeles County, California.

Likely witnesses in this matter include: current and former officials, employees, contractors, election workers, and agents of Los Angeles County; persons aggrieved by Los Angeles County's conduct; expert witnesses; and other individuals identified during the course of discovery.

Key documents will include Los Angeles County's records and information relating to the accessibility of the voting program used in elections administered by Los Angeles County, including the County's policies, practices, and procedures and accessibility assessments; the training or instructions that relate to or concern accessibility or people with disabilities that Los Angeles County provides to election workers and others who administer elections at County polling places/Vote Centers; and records and documents pertaining to the United States' investigation of Los Angeles County (including records of individual voter experiences, observations and reports of the United States' investigators and consultants, and the United States' correspondence with potential witnesses).

**E.   DAMAGES**

The United States is not seeking monetary relief in this action.

**F.   INSURANCE**

Los Angeles County does not believe there is any insurance agreement that would be relevant to this case, as it is not aware of any agreement that would be involved in satisfying any part of a judgment or indemnifying or reimbursement any payments made to satisfy a judgment.

**G.   MOTIONS**

At this time, counsel do not believe that motions seeking to add other parties or claims, file amended pleadings, transfer venue, or challenge the court's jurisdiction are

likely in this action, however, counsel reserves the right to file such motions.

**H.   DISPOSITIVE MOTIONS**

Depending on the development of evidence in the case, the United States may move for summary judgment on Los Angeles County's liability under the ADA. Similarly, and based on facts and materials that may be developed in discovery, Los Angeles County may move for summary judgment based on the scope of the United States' enforcement powers under the ADA.

**I.   MANUAL FOR COMPLEX LITIGATION**

The Manual for Complex Litigation does not apply to this case.

**J.   STATUS OF DISCOVERY**

The United States served interrogatories and requests for production of documents on Defendant on August 22, 2023. Los Angeles County served interrogatories and requests for production of documents on the United States on August 28, 2023.

**K.   DISCOVERY PLAN**

The parties exchanged the initial disclosures required by Fed. R. Civ. P. 26(a). At this time, the parties do not foresee any need to change what disclosures should be made under Rule 26(a).

The United States anticipates taking depositions of Los Angeles County's Rule 30(b)(6) representative(s); Dean Logan, Los Angeles County Registrar-Recorder; Timothy McNamara; Jaime Young; certain election workers; expert witnesses; and other individuals identified during the course of discovery. The United States may require more than ten depositions to complete its discovery and will stipulate or move, if necessary.

Los Angeles County anticipates taking depositions of individuals who conducted, advised on, or analyzed the results of the United States' investigation of County voting sites, including (but not limited to) any experts or surveyors. Los Angeles County also anticipate taking depositions of individuals who have been identified by the United States as having allegedly experienced inaccessibility at the County's voting sites. Los

Angeles County may also require more than ten depositions to complete its discovery and will stipulate or move, if necessary.

The parties anticipate propounding written discovery requests, including requests for admission, document requests, and interrogatories.

The United States requested the County to provide on-site access to all Los Angeles County Vote Centers during all elections to conduct accessibility surveys of Vote Centers during the voting periods. However, the County has not agreed to provide its consent to the United States' request at this time.

For its part, the County would like additional time to meet-and-confer with the United States on its request. In the past, and to facilitate their surveys of Vote Centers during voting periods in statewide or countywide elections, the County has provided Department of Justice contractors and employees with letter credentials to ensure the cooperation of election workers. The County intends to continue to work with the United States to allow access to the extent that it does not disrupt the voting process.

The County needs further discussions with the United States, however, to understand the scope of this access request. The County will continue meeting-and-conferring on the United States' request in the coming days.

The United States anticipates that discovery will be necessary on topics relating to its claims and Los Angeles County's affirmative defenses, including but not limited to the following: (1) The accessibility of the voting programs used in elections administered by Los Angeles County; (2) Los Angeles County' policies, practices, and procedures related to the accessibility of its voting programs and any implementation thereof; (3) The criteria by which polling places and ballot drop boxes are identified and selected, including accessibility criteria; (4) Accessibility assessments of any polling places (or potential polling places) and ballot drop boxes used in Los Angeles County elections; (5) Any efforts to remediate accessibility issues at polling places or ballot drop boxes in Los Angeles County; (6) Los Angeles County's policies, practices, and procedures concerning alternatives (e.g., curbside voting) to voting inside a polling place

for individuals with disabilities; (7) the role of election workers during elections, including but not limited to policies, practices, and procedures regarding the duties and powers of election workers; (8) the training or instructions that relate to or concern accessibility or people with disabilities that Los Angeles County provides to election workers and others who administer elections at Los Angeles County polling places; (9) information relating to Los Angeles County's affirmative defenses, including but not limited to the affirmative defenses in its Answer regarding lack of standing, laches and statute of limitations, mootness, estoppel, and undue hardship, *see* ECF No. 15; and (10) appropriate relief, including declaratory and injunctive relief.

Los Angeles County believes that discovery will be necessary on, among other issues, matters relating to:

- The evidentiary basis for the United States' allegations that Los Angeles County does not provide a voting program that is accessible to persons with mobility and vision disabilities, particularly whether the United States' evidence includes recent (rather than outdated or untimely) data, and whether that evidence includes the actual experiences of individual voters (as opposed to survey measurements and observations at Vote Centers);
- Whether there is a sufficient basis for the injunctive relief requested by the United States, particularly where such relief may be moot (for example, where Vote Centers have already been remedied or are no longer in use), overly broad (for example, where it lacks a sufficient basis of actual individual voter experiences), or beyond the scope of the United States' enforcement authority under the ADA.

At this time, the parties do not propose that discovery should be conducted in phases or otherwise limited.

The parties intend to submit a separate proposed order that will govern discovery of electronically stored information ("ESI") and that includes a proposed order under Fed. R. Evid. 502(d).

**L.     DISCOVERY CUT-OFF**

The United States proposes a fact discovery cut-off of May 17, 2024. Los Angeles County proposes a fact discovery cut-off date of July 17, 2024.

**M.     EXPERT DISCOVERY**

The United States proposes exchanging expert witness disclosures on or before May 31, 2024, and rebuttal expert witness disclosures (if any) on or before June 14, 2024. Los Angeles County proposes exchanging expert witness disclosures on or before July 31, 2024, and rebuttal expert witness disclosures (if any) on or before August 14, 2024.

The United States proposes an expert discovery cut-off of June 28, 2024. Los Angeles County proposes an expert discovery cut-off of August 28, 2024.

**N.     SETTLEMENT CONFERENCE / ALTERNATIVE DISPUTE RESOLUTION ("ADR")**

The parties have met and exchanged communications attempting to resolve the case, and have been unable to reach agreement.

The parties request that, for purposes of ADR, this case be referred to a neutral official who is not involved in this case. Accordingly, the parties request ADR Procedure No. 2 under Local Rule 16-15.4 ("the parties shall appear before a neutral selected from the Court's Mediation Panel").

**O.     TRIAL ESTIMATE**

This case involves a trial by jury. The United States has alleged that Los Angeles County has engaged in long-term discriminatory practices that have violated the ADA by failing to provide voting programs that are accessible to persons with mobility and vision disabilities, and that the discrimination continues through the present. The parties anticipate that this trial will take between four to eight days.  The United States anticipates calling numerous witnesses, including fact witnesses, aggrieved persons, and expert witnesses.

Los Angeles County alleges that its voting program does not discriminate against voters with disabilities and that there is no basis for the United States' requested injunctive and declaratory relief. Los Angeles County believes it will call numerous witnesses and experts at trial, and expects trial to last no more than five court days.

As discovery proceeds and the parties further develop their estimates of the number of witnesses, the parties will update the Court.

**P.    TRIAL COUNSEL**

For Plaintiff United States of America:

> Katherine M. Hikida
>
> Matthew Barragan

For Defendant Los Angeles County:

> Christopher Pelham
>
> Jacqueline C. Karama
>
> Grace Park

**Q.    INDEPENDENT EXPERT OR MASTER**

At this time, the parties do not believe that the Court should consider appointing a master or independent scientific expert. However, the parties will reassess that option as discovery proceeds.

**R.    SCHEDULE WORKSHEET**

The parties are submitting a completed Worksheet, appended to the end of this Joint 26(f) Report.

**S.    OTHER ISSUES**

None.

| | | |
|---|---|---|
| 1 | Dated: September 15, 2023 | E. MARTIN ESTRADA<br>United States Attorney |
| 2 | | DAVID M. HARRIS |
| 3 | | Assistant United States Attorney<br>Chief, Civil Division |
| 4 | | RICHARD M. PARK |
| 5 | | Assistant United States Attorney<br>Chief, Civil Rights Section, Civil Division |
| 6 | | |
| 7 | | *Katherine M. Hikida* |
| 8 | | KATHERINE M. HIKIDA<br>Assistant United States Attorney |
| 9 | | Civil Rights Section, Civil Division |
| 10 | | |
| 11 | | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |
| 12 | | |
| 13 | Dated: September 15, 2023 | NORTON ROSE FULBRIGHT US LLP |
| 14 | | JACQUELINE C. KARAMA<br>GRACE PARK |
| 15 | | |
| 16 | | |
| 17 | | *[signature]* |
| 18 | | CHRISTOPHER PELHAM |
| 19 | | |
| 20 | | Attorneys for Defendant<br>LOS ANGELES COUNTY, |
| 21 | | CALIFORNIA |