KRISTEN CLARKE
Assistant Attorney General for Civil Rights
REBECCA B. BOND (Cal. Bar No. 202220)
Chief, Disability Rights Section
KEVIN J. KIJEWSKI
Deputy Chief, Disability Rights Section
ELIZABETH JOHNSON
ALICE W. YAO
KATHERINE DUTCHER (Cal. Bar No. 313010)
Trial Attorneys, Disability Rights Section
U.S. Department of Justice
950 Pennsylvania Ave. NW — 4CON
Washington, D.C. 20530

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Chief, Civil Division
RICHARD M. PARK
Chief, Civil Rights Section
KATHERINE M. HIKIDA (Cal. Bar No. 153268)
MATTHEW J. BARRAGAN (Cal. Bar No. 283883)
MARGARET M. CHEN (Cal. Bar No. 288294)
ALEXANDRA YOUNG (Cal. Bar No. 336004)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, CALIFORNIA,<br><br>Defendant. | No. 2:23-cv-05165-FLA(MRWx)<br><br>**REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  July 12, 2024<br>Hearing Time:  1:30 p.m.<br>Courtroom:  First Street Courthouse<br>               Courtroom 6B<br><br>Honorable Fernando L. Aenlle-Rocha<br>United States District Judge |

# TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

I.      INTRODUCTION ...................................................................................... 1

II.     ARGUMENT ............................................................................................. 2

      A.     The County is Engaged in Ongoing, Not Merely Threatened, Title II
           Violations ........................................................................................... 2

           1.     The County currently discriminates against voters with
                disabilities. ....................................................................... 2

           2.     *Mississippi* contravenes Ninth Circuit precedent. ................ 5

      B.     The Uncontroverted Evidence Establishes Barriers Throughout the
           County's In-Person Voting Program ................................................ 6

           1.     The County's site selection process violates Title II. ......... 7

           2.     The evidence shows accessibility barriers throughout the
                County's in-person voting program. ................................... 8

           3.     The County's limited mitigation measures are inadequate. ............ 10

           4.     Facilities recently "constructed by, on behalf of, or for the use
                of" the County are not accessible. ................................... 11

III.    CONCLUSION ....................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

3

## **<u>FEDERAL CASES</u>**

4
5
*Burlington N. R.R. Co. v. Dep't of Revenue of State of Washington*,
    934 F.2d 1064 (9th Cir. 1991) .................................................................5

6
7
*California ex rel. Lockyer v. Cnty. of Santa Cruz*,
    2006 WL 3086706 (N.D. Cal. Oct. 30, 2006) ........................................7

8
9
*Dare v. California,*
    191 F.3d 1167 (9th Cir. 1999) .............................................................11

10
*Dare v. State Dep't of Motor Vehicles*,
    1999 WL 731818 (C.D. Cal. May 30, 1999) .......................................11

11
12
*Davis v. Shah*,
    821 F.3d 231 (2d Cir. 2016)...................................................................6

13
14
*Disabled in Action v. Bd. of Elections in City of New York*,
    752 F.3d 189 (2d Cir. 2014)...................................................................4

15
16
*Fisher v. Okla. Health Care Auth.*,
    335 F.3d 1175 (10th Cir. 2003) ..............................................................6

17
18
*Fitzmorris v. N.H. Dep't of Health & Hum. Servs. Comm'r Lori Weaver*,
    2023 WL 8188770 (D.N.H. Nov. 27, 2023) ...........................................6

19
20
*Fitzmorris v. Weaver*,
    2024 WL 231883 (D.N.H. Jan. 22, 2024).................................................6

21
22
*Huezo v. Los Angeles Cmty. College Dist.*,
    2007 WL 7289347 (C.D. Cal. Feb. 27, 2007) .........................................3

23
*Jeremiah M. v. Crum*,
    2023 WL 6316631 (D. Alaska Sept. 28, 2023) ......................................6

24
25
*Kirola v. City & Cnty. of San Francisco*,
    74 F. Supp. 3d 1187 (N.D. Cal. 2014)....................................................8

26
27
*Kirola v. City & Cnty. of San Francisco*,
    860 F.3d 1164 (9th Cir. 2017) ................................................................8

28

*M.R. v. Dreyfus*,
  697 F.3d 706 (9th Cir. 2012) ........................................................................6

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) ......................................................................................5

*Pascuiti v. N.Y. Yankees*,
  87 F. Supp. 2d 221 (S.D.N.Y. 1999) .............................................................8

*Putnam v. Oakland Unified Sch. Dist.*,
  1995 WL 873734 (N.D. Cal. June 9, 1995) ...................................................3

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ........................................................................6

*Shotz v. Cates*,
  256 F.3d 1077 (11th Cir. 2001) ....................................................................4

*Steimel v. Wernert*,
  823 F.3d 902 (7th Cir. 2016) ........................................................................6

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ......................................................................................5

*Timothy B. v. Kinsley*,
  2024 WL 1350071 (M.D.N.C. Mar. 29, 2024) ..............................................6

*United Spinal Ass'n v. Bd. of Elec.*,
  882 F. Supp. 2d 615 (S.D.N.Y. 2012) ...................................................4, 9, 10

*United States v. Mississippi*,
  82 F.4th 387 (5th Cir. 2023) ......................................................................2, 5

*United States v. Unified Jud. Sys.*,
  2023 WL 3044592 (E.D. Pa. Apr. 21, 2023) .................................................5

*United States v. W. T. Grant Co.*,
  345 U.S. 629 (1953) ......................................................................................5

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ......................................................................................3

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
  979 F.3d 426 (6th Cir. 2020) ........................................................................6

*Woorley v. Avanquest N. Am. Inc.*,
   2013 WL 6576732 (N.D. Cal. Dec. 13, 2013)................................................................9

*Zukle v. Regents of the Univ. of Cal.*,
   166 F.3d 1041 (9th Cir. 1999) ...............................................................................3

## **FEDERAL STATUTES**

29 U.S.C. § 794 ..............................................................................................................3

## **FEDERAL REGULATIONS**

28 C.F.R. § 35.104 .......................................................................................................11

28 C.F.R. § 35.130 ..................................................................................................5, 6, 7

28 C.F.R. § 35.150 .....................................................................................................2, 7

28 C.F.R. § 35.151 .......................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In its Opposition (ECF No. 46), Los Angeles County concedes two fundamental points: (1) accessibility barriers identified by its surveyors are pervasive throughout vote centers, and (2) its process selects vote centers with known accessibility barriers and does not exclude those centers or ensure appropriate mitigation measures are used during elections. The County concedes that it subjects voters with disabilities to accessibility barriers. Rather than also conceding that it is violating the ADA, it argues it "could hardly do more to enable County voters with disabilities to vote in whatever manner they prefer." Opp'n 25. But the undisputed facts show the County can—and must—do more to choose accessible vote centers or ones that can be made accessible through the use of temporary measures, by ensuring that vote centers do not have accessibility barriers when voters with disabilities go to vote. These steps are necessary to ensure that voters with disabilities can vote in person, privately, and independently.

Moreover, the County's Opposition makes clear there is no real dispute as to the material facts in this case. Rather, its Opposition is based solely on its view of what is legally required to assert a claim under the ADA. The County's view, however, is inconsistent with the law of this Circuit and therefore fatally flawed. In its Opposition, the County attempts to shift its responsibility to ensure the accessibility of its vote centers to voters with disabilities. It wrongly contends that it may violate Title II with impunity unless and until individuals with disabilities unsuccessfully attempt to access vote centers with barriers that could cause injury, complain to the County, and unsuccessfully request accommodations. *Id.* at 10. The County asserts that it need not remove barriers because "voters with disabilities [have] ample time to vote in-person and/or to find an alternate vote center on the odd chance they encounter a barrier at a vote center." *Id.* at 25. The County makes this assertion even though it does not publish which vote centers are accessible. SGDF-10.

The County relies on an inapplicable case, *United States v. Mississippi*, to justify

1

its unfounded position. The Fifth Circuit's *Mississippi* opinion departed from Ninth Circuit precedent, and the claims here are distinguishable. Under the Ninth Circuit's analysis in *Kirola v. City and County of San Francisco*, evidence of widespread accessibility barriers is enough to establish the County's failure to provide an accessible in-person voting program.

## II.    ARGUMENT

### A.    The County is Engaged in Ongoing, Not Merely Threatened, Title II Violations

Los Angeles County wrongly asserts the United States' claims are based on a "prospective risk" of discrimination to voters with disabilities. Opp'n 10 (citation and emphasis omitted). The County's argument fails factually and legally because (1) the County *currently* discriminates against voters with disabilities in violation of the ADA by failing to provide an accessible in-person voting program; and (2) the County relies on an inapplicable Fifth Circuit opinion—*United States v. Mississippi*, 82 F.4th 387 (5th Cir. 2023)—that conflicts with Ninth Circuit precedent.

#### 1.    The County currently discriminates against voters with disabilities.

In its Opposition (at 5, 10-15), the County baldly asserts it cannot be liable under Title II absent some minimum, though unspecified, number of complaints by individuals with disabilities that they were *entirely precluded* from voting. The County notes that the United States has identified only two voters who complain that they faced difficulties in voting. Opp'n 12. But the United States does not argue these voters' experiences alone establish liability at the summary judgment stage. Voter experiences of discrimination are not necessary to establish liability in this case. Instead, these accounts illustrate how inaccessible vote centers impact voters with disabilities. Title II's plain text requires the County to ensure its in-person voting program, when viewed in its entirety, is "readily accessible to and usable by" voters with disabilities. 28 C.F.R. § 35.150(a). The County's failure to do so violates Title II. Further, the United States has standing to challenge violations of the ADA regardless of individual injuries; when Congress enacts

a law prohibiting certain conduct, a violation of that statute inherently constitutes an injury to the United States for purposes of establishing Article III standing. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000).

The County has a continuous obligation to ensure its voting program is accessible. It cannot wait until voters with disabilities identify accessibility barriers before rectifying them. In *Huezo v. Los Angeles Community College District*, this court found the plaintiff did not have the "high degree of convenient accessibility" to facilities intended by the ADA and held defendants violated Title II by "requir[ing] disabled students to identify barriers they encounter[ed] while attempting to access programs or facilities and seek accommodation." No. CV 04-9772 MMM(JWJx), 2007 WL 7289347, at *8-9 (C.D. Cal. Feb. 27, 2007) (citation omitted).

Likewise, in *Putnam v. Oakland Unified School District*, the court found that Section 504 of the Rehabilitation Act and its regulations[1] impose an "affirmative duty continuously 'to operate each program . . . so that the program . . ., when viewed in its entirety, is readily accessible to handicapped persons[]'" and do not require problems to "actually arise" before taking action. No. C-93-3772CW, 1995 WL 873734, at *10 (N.D. Cal. June 9, 1995) (ellipses in original). The court reasoned waiting for problems to "actually arise" will "impose[] the further discrimination of forcing [individuals with disabilities] to wait for the barriers to be remedied, and in the meantime either be excluded or be subjected to the perils attendant to the barriers" and "discourage[es them] . . . from attempting to participate in . . . [a] program[] located in inaccessible facilities." *Id.*

While the County has procedures for assessing the accessibility of its vote centers, it selects facilities with known accessibility barriers and consistently fails to implement

---

[1] Section 504 prohibits discrimination based on disability in any program or activity receiving federal financial assistance. 29 U.S.C. § 794. "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

appropriate mitigation measures to address those barriers. The County improperly shifts the burden to voters with disabilities to find alternate vote centers or lodge complaints when "they encounter a barrier at a vote center." Opp'n 25. These arguments are contrary to the ADA's text, its implementing regulation, and caselaw; it is the County's burden to ensure that voters with disabilities can access its in-person voting program. *See id.* at 10 (indicating the County "would have accommodated" complainants "upon request").

Further, there is evidence a voter with a disability, Carrie Madden, faced discrimination at a vote center during the March 2024 Election. The County improperly disregards this evidence because Ms. Madden ultimately voted with assistance from her personal care attendant. *Id.* at 14. But the United States need not show that individuals with disabilities were completely prevented from voting to establish a violation. In *United Spinal Association v. Board of Elections*, the District Court for the Southern District of New York rejected this argument because "[t]his interpretation, which would demand that an individual was actually deprived of the right to cast a ballot, is overly broad and unsupported by any precedent." 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012), *aff'd sub nom. Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014). Instead, defendants must "provide a level of access to their voting program beyond the simple assurance that voters with disabilities are able to cast a ballot in some way, shape, or form." *Id.*

Similarly, in *Shotz v. Cates*, the Eleventh Circuit found a courtroom is not "readily accessible" if the slope of courthouse ramps impedes access and bathrooms are unfit for use by individuals with disabilities, "regardless [of] whether the disabled person manages in some fashion to attend the trial." 256 F.3d 1077, 1080 (11th Cir. 2001). "A violation of Title II . . . does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity" because "[t]he regulations specifically require that services, programs, and activities be 'readily accessible.'" *Id.*

1  (citation omitted).[2]

2      The undisputed facts support a finding that the County's in-person voting program

3  subjects voters with disabilities to actual discrimination. Even if the identified

4  accessibility barriers create the *potential* to deny access to voters with disabilities, those

5  barriers make the County's in-person voting program inaccessible during elections and

6  must be remedied.

7                 2.   <u>*Mississippi* contravenes Ninth Circuit precedent.</u>

8      The County wrongly construes the United States' claims as seeking liability for

9  the serious "risk" of discrimination, and then wrongly argues that such liability is not

10  cognizable under Title II based on the Fifth Circuit's *Mississippi* opinion, which is

11  wholly inapplicable here. Opp'n 10. The *Mississippi* court held that a "serious risk" that

12  individuals with serious mental illness would be unnecessarily institutionalized was not

13  actionable under the integration mandate of 28 C.F.R. § 35.130(d) and the Supreme

14  Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). 82 F.4th at

15  392-98. *Mississippi* is an outlier that conflicts with Ninth Circuit precedent.[3]

16      The Ninth Circuit and all five other circuits that have addressed liability based on

17  a "serious risk" of unnecessary institutionalization have uniformly concluded, contrary to

18

---

19      [2] Even if, as the County incorrectly argues, there could only be actionable
20  discrimination when inaccessible vote centers have entirely precluded many individuals with disabilities from voting, this court would still have discretion to issue an injunction to prevent future occurrences of discrimination against voters with disabilities. *See, e.g.*,
21  *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (explaining "[t]he purpose of an injunction is to prevent future violations" and such relief is appropriate when there is
22  "cognizable danger of recurrent violation"); *Burlington N. R.R. Co. v. Dep't of Revenue of State of Washington*, 934 F.2d 1064, 1074-75 (9th Cir. 1991).

23      [3] The County also relies on *United States v. Unified Judicial System*, which is
24  similarly inapplicable. Opp'n 10-11. At the motion to dismiss stage, the *UJS* court rejected "conclusory" allegations about six county courts' policies where the facts pled
25  were not "specific enough to plausibly state a claim" that the challenged policies had been enforced. No. 22-709, 2023 WL 3044592, at *8 (E.D. Pa. Apr. 21, 2023). The
26  claims here are not based on policies that may never be implemented, but on the County's current policy of selecting vote centers with known accessibility barriers, and
27  ample evidence that voters with disabilities are and will be harmed by those barriers. *See also Tennessee v. Lane*, 541 U.S. 509 (2004) (holding two aggrieved individuals stated a
28  Title II claim against the State of Tennessee based on allegations of specific barriers at five courthouses and broad allegations of barriers at others).

*Mississippi*, that Title II and the integration regulation prohibit both unnecessary institutionalization of individuals with disabilities *and* the serious risk of unnecessary institutionalization.[4] In *M.R. v. Dreyfus*, the Ninth Circuit held: "An ADA plaintiff need not show that institutionalization is 'inevitable' . . . in order to state a violation of the integration mandate," and "need only show that the challenged state action creates a serious risk of institutionalization." 697 F.3d at 734.[5] Further, every court to examine the *Mississippi* opinion, including one within the Ninth Circuit, has rejected its holding. In *Jeremiah M. v. Crum*, the district court explicitly declined to follow *Mississippi*, finding "no reason to deviate from Ninth Circuit precedent" and reaffirming that "[a] plaintiff asserting a violation of the integration mandate need only show that the state action at issue 'creates a serious risk of institutionalization.'" No. 3:22-CV-00129-JMK, 2023 WL 6316631, at *26 (D. Alaska Sept. 28, 2023) (citation omitted).[6]

**B.    The Uncontroverted Evidence Establishes Barriers Throughout the County's In-Person Voting Program**

The County argues it "[does] the best we can with [the] most accessible available suitable site[s]," Opp'n 23 (alterations in original) (citation omitted), and uses "many accessibility mitigations." *Id.* at 19. But the uncontroverted evidence shows the County

---

[4] *See M.R. v. Dreyfus*, 697 F.3d 706, 734-35 (9th Cir. 2012); *Davis v. Shah*, 821 F.3d 231, 262-63 (2d Cir. 2016); *Pashby v. Delia*, 709 F.3d 307, 321-22 (4th Cir. 2013); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 460-61 (6th Cir. 2020); *Steimel v. Wernert*, 823 F.3d 902, 914 (7th Cir. 2016); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181-82 (10th Cir. 2003).

[5] The Ninth Circuit's analysis better adheres to the regulation's language. A public entity can fail to "administer [its] services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities" in violation of the integration regulation, regardless of whether such individuals have already been or are at serious risk of being unnecessarily institutionalized. 28 C.F.R. § 35.130(d). Similarly, here, courts agree that a failure to provide "readily accessible" vote centers itself constitutes actionable discrimination. *Supra* Part II.A.1.

[6] *Accord Timothy B. v. Kinsley*, No. 1:22-CV-1046, 2024 WL 1350071, at *15 (M.D.N.C. Mar. 29, 2024); *see also Fitzmorris v. N.H. Dep't of Health & Hum. Servs. Comm'r Lori Weaver*, No. 21-CV-25-PB, 2023 WL 8188770, at *2 n.2, *23-24 (D.N.H. Nov. 27, 2023) (finding *Mississippi* "inapposite" and assuming without deciding that "actions that give rise to a serious risk of unjustified institutionalization qualify as actionable discrimination"), *stay denied pending appeal sub nom. Fitzmorris v. Weaver*, No. 21-cv-25-PB, 2024 WL 231883 (D.N.H. Jan. 22, 2024).

6

fails to ensure voters with disabilities have equal opportunity to vote in person based on (1) its selection of vote centers with known, unmitigated accessibility barriers; (2) pervasive accessibility barriers throughout March 2024 Election vote centers; and (3) a lack of remedies for identified barriers. 28 C.F.R. §§ 35.130(b)(4), 35.150(b)(1).

### 1.    The County's site selection process violates Title II.

The County violates the ADA by selecting vote centers "[t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination," or "[t]hat have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." *Id.* § 35.130(b)(4). Despite the County's assertion that it "uses the most accessible sites available," Opp'n 16, it "agrees that it *does* use facilities with known accessibility issues." SGDF, Response to Conclusion of Law (RCL) 16 (emphasis added); SGDF-18. Although it "deprioritizes sites that have significant, *non-remediable* accessibility problems[,] . . . such sites are not officially excluded from consideration" and would be used if they were the "only available option." Opp'n 17 (emphasis added). The County's state law obligation to consider factors other than accessibility does not obviate its obligation to comply with the ADA.

The United States does not contend that the County's selection of vote centers that "do not fully conform" to ADA Standards, by itself, establishes liability under the ADA. *Cf. California ex rel. Lockyer v. Cnty. of Santa Cruz*, No. C-05-04708 RMW, 2006 WL 3086706, at *4 (N.D. Cal. Oct. 30, 2006). Rather, the United States moves based on pervasive accessibility barriers at the County's vote centers and its failure to employ mitigation measures to ensure that, despite selecting vote centers with known accessibility violations, its in-person voting program is accessible.

2.    <u>The evidence shows accessibility barriers throughout the County's in-person voting program.</u>

The United States meets the burden established by *Kirola v. City and County of San Francisco* to show that the County's in-person voting program violates Title II's program access provisions due to widespread accessibility barriers. 860 F.3d 1164 (9th Cir. 2017).[7]  In contrast to the "anecdotal testimony" in *Kirola* about accessibility barriers and the inspections of only a small portion of San Francisco's "approximately 2,000 miles of sidewalks, 27,585 street corners, and roughly 7,200 intersections," *id.* at 1170 (citation omitted)*,* here there is ample evidence, much more than "anecdotal testimony," *id.* at 1183, of program-wide accessibility barriers.[8] The County admits that complying with ADA Standards is key to ensuring vote centers are readily accessible to and usable by voters with disabilities. SGDF-74.[9] It does not—and cannot—dispute that the types of barriers it identified (e.g., exceedingly steep slopes) impede a voter from exiting a vehicle and safely transferring to their wheelchair upon arriving at a vote center, and increase the likelihood of injury when going to the vote center. SGDF-30, 37-42. Jaime Young, who selects the County's vote centers and designs mitigation measures to address accessibility barriers, testified in deposition that "[a]pproximately" 98% of the

---

[7] The *Kirola* district court found cases involving provision of accessible polling places "to be inapposite" because "issues relating to the location of polling places and whether voters have access to a public entity's 'program of voting'" are unique because providing accessible polling places "encourage[s] and facilitate[s] voting" and guards against "the threat of voter disenfranchisement." 74 F. Supp. 3d 1187, 1237 (N.D. Cal. 2014), *aff'd in part, rev'd in part,* 860 F.3d 1164 (9th Cir. 2017). The court stated these issues "are separate and distinct from whether disabled persons have program access to the City's facilities and public right-of-way." *Id.*

[8] The review of County surveys focused on features needed by most voters with disabilities to access vote centers: accessible parking, passenger drop off areas, accessible exterior routes, accessible interior routes to the voting area, and the voting area. Decl. of Glenn Dea ¶ 25, ECF No. 34-1.

[9] The County's argument that "DOJ cannot merely present evidence that poll sites do not meet accessibility standards, such as through survey data," Opp'n 18, ignores the principle that individual accessibility barriers are necessary to establish a program is not readily accessible. *See Pascuiti v. N.Y. Yankees*, 87 F. Supp. 2d 221, 224 (S.D.N.Y. 1999) ("[E]ach barrier is a building block for a finding that the [program], viewed in its entirety, is not readily accessible.").

644 March 2024 Election vote centers had unmitigated accessibility barriers, showing they were common throughout those vote centers. SGDF-75. The County disputes the precise percentage but acknowledges she gave "an approximate figure" and "explain[ed] that essentially no buildings in the County are, or remain, perfectly compliant." SGDF-17 (citation omitted). A review[10] of County surveys of fifty March 2024 Election vote centers confirms Ms. Young's testimony by showing that forty-eight have unmitigated accessibility issues. SGDF-77.[11] This evidence establishes the widescale accessibility problems that pervade the County's in-person voting program, rendering the program inaccessible to voters with disabilities.

*United Spinal* is instructive. There, the district court granted plaintiffs' summary judgment motion based on similar evidence of accessibility barriers at a subset of polling sites used during recent elections, including 53 of 628 sites used for one election and a comparable number for another. 882 F. Supp. 2d at 620-21. The court held plaintiff's evidence established there was "no genuine dispute of material fact as to the existence of

---

[10] The County's objections to Mr. Dea's declaration are baseless. The United States offered Mr. Dea for a deposition because he provided a declaration supporting its motion. *See, e.g., Woorley v. Avanquest N. Am. Inc.*, No. C 12-04391, 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013) (concluding discovery limited to information related to expert's statements, findings, or opinions that were put at issue in a pleading or motion). Questions about a Rule 26 report are premature because expert disclosures are not yet due. And the United States timely produced documents responsive to the County's Amended Notice. Yao Decl. ¶ 6.

[11] The County criticizes Mr. Dea's reliance on surveys taken up to five years before the March 2024 Election, Opp'n 19, and argues his analysis did not purport to include on-site visits or confirmation of the surveyors' measurements. SGDF-21. But Mr. Dea reviewed the most recent surveys produced by the County, which it relied on to select March 2024 Election vote centers. The County highlights errors in its surveys but has produced no evidence of corrected measurements; these purported errors only underscore the inadequacy of the County's site selection process. Opp'n 20.

The County states Mr. Dea's declaration did not include review of mitigation measures for approximately half of the fifty vote centers reviewed. *Id.* at 19-20. Mr. Dea reviewed the mitigation measures produced by the County; additional documentation of proposed mitigation measures shown to Mr. Dea during his deposition, Dea Dep., Ex. 9, and attached to Ms. Young's declaration changes the accessibility of only two vote centers. Even assuming the County used cones, signage, and doorstops to address barriers at the fifty vote centers, forty-six vote centers or 92% still have unmitigated accessibility barriers. *See* Dea Decl., Exs. 2-51 and *supra.*

9

1  pervasive and recurring barriers to accessibility on election days at poll sites designated

2  by [defendants]." *Id.* at 624. The court concluded plaintiffs "provided copious

3  documentation of barriers at poll sites" and defendants admitted "more than two poll

4  sites [did] not meet accessibility standards." *Id.* The evidence here also establishes the

5  pervasiveness of barriers at the County's vote centers.

6            3.    The County's limited mitigation measures are inadequate.

7            The County's limited mitigation measures do not address many accessibility

8  barriers identified by its surveyors. The County states it mitigates "significant barriers to

9  access" (without defining "significant"), SGDF, RCL 15, and each March 2024 Election

10 vote center had a packet identifying mitigation measures like "cones, signs, doorstops,

11 and floor mats." Opp'n 8, 23; SGDF-14. These limited measures primarily address

12 accessibility barriers inside vote centers and cannot remedy other violations identified by

13 surveyors, including many outside the building. As a general practice, the County does

14 not use other feasible and affordable mitigation measures, including portable doorbells,

15 portable ramps, metal plates, wedge ramps, or temporary gap filler. SGDF-15, 78; *id.*,

16 RCL 14. The County's limited use of mitigation measures does not address barriers such

17 as changes in level, surface openings, and slopes and cross slopes that do not meet the

18 ADA Standards.

19           The County's assertion that "[e]lection workers must follow the mitigation plans

20 every day of the voting period, and troubleshooters ensure that mitigation plans are

21 followed," Opp'n 8, is mere conjecture. *See United Spinal*, 882 F. Supp. 2d at 627

22 ("Defendants' evidence consists of mere unsupported assertions and conjecture that

23 training is adequate, and inspections are taking place."). The only undisputed evidence of

24 conditions during the March 2024 election contradicts this assertion. The County's Elks

25 Lodge #2190 mitigation plan indicated the door at the accessible entrance should be

26 propped open. Opp'n 14; Statement of Additional Facts (SAF) No. 123, ECF No. 46-2.

27 But Ms. Madden testified it was not propped open during her visit and no election

28 workers were present to assist. SGDF-56, 57, 67. Even if the County identified necessary

1    mitigation measures, they were not reliably implemented.

2        Further, the County defends its failure to remedy accessibility barriers at its vote

3    centers by improperly relying on curbside voting as an alternative for voters with

4    disabilities who cannot access a vote center. But its curbside voting program itself

5    subjects voters with disabilities to unequal treatment as they must have a cellphone to

6    vote, and in the March 2024 Election, some vote centers had no curbside voting signs,

7    Garcia Suppl. Decl. ¶ 8; and some signs had no telephone number, Dea Suppl. Decl. ¶¶

8    3, 5.

9            4.    Facilities recently "constructed by, on behalf of, or for the use of" the

10                County are not accessible.

11       The County is obligated to ensure facilities "constructed by, on behalf of, or for

12   the use of" the County are "readily accessible to and usable by individuals with

13   disabilities, if the construction was commenced after January 26, 1992." 28 C.F.R.

14   § 35.151(a)(1). It wrongly contends that the County-owned Pico Rivera Library was

15   accessible during the March 2024 Election because "the sole issue DOJ identifies within

16   the facility . . . is irrelevant because the mitigation packet for the library addresses this

17   issue with cones." Opp'n 24. But the County disregards barriers at Pico Rivera Library

18   on the accessible route from the property line to the building entrance, which were

19   unmitigated during the March 2024 Election. Exterior routes are part of the "facility"

20   and must be accessible. 28 C.F.R. § 35.104 (defining "facility" as "all or any portion of

21   buildings, structures, sites, . . . roads, walks, passageways, parking lots, or other real or

22   personal property, including the site where the building . . . is located."); *see also Dare v.*

23   *State Dep't of Motor Vehicles*, No. CV 96-5569 JSL, 1999 WL 731818, at *1 (C.D. Cal.

24   May 30, 1999) (holding ADA requires creation and maintenance of accessible parking to

25   provide access to buildings where programs are housed), *aff'd sub nom. Dare v.*

26   *California*, 191 F.3d 1167 (9th Cir. 1999).

27

28

                                          11

## III.   CONCLUSION

For these reasons, the United States requests the Court grant its motion for partial summary judgment.

Dated: June 14, 2024                              Respectfully submitted,

E. MARTIN ESTRADA                                KRISTEN CLARKE
United States Attorney                           Assistant Attorney General for Civil Rights
DAVID M. HARRIS                                  REBECCA B. BOND
Chief, Civil Division                            Chief, Disability Rights Section
RICHARD M. PARK
Chief, Civil Rights Section                      _/s/ Alice W. Yao_
                                                 KEVIN J. KIJEWSKI
                                                 Deputy Chief, Disability Rights Section
_/s/ Katherine M. Hikida_                        ELIZABETH JOHNSON
KATHERINE M. HIKIDA                              ALICE W. YAO
MATTHEW J. BARRAGAN                              KATHERINE DUTCHER
MARGARET M. CHEN                                 Trial Attorneys
ALEXANDRA YOUNG                                  Disability Rights Section
Assistant United States Attorneys
                                                 Attorneys for Plaintiff
                                                 United States of America

12

1

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

2

The undersigned, counsel of record for Plaintiff United States of America, certifies

3

that the memorandum of points and authorities contains 4,134 words, which complies with

4

the word limit set by the Court's Initial Standing Order, ECF No. 10 at 5.

5

6

Dated: June 14, 2024                    Respectfully submitted,

7

E. MARTIN ESTRADA                       KRISTEN CLARKE
United States Attorney                  Assistant Attorney General for Civil Rights

8

DAVID M. HARRIS                         REBECCA B. BOND
Chief, Civil Division                   Chief, Disability Rights Section

9

RICHARD M. PARK
Chief, Civil Rights Section

10

_/s/ Alice W. Yao_
KEVIN J. KIJEWSKI
Deputy Chief, Disability Rights Section

11

_/s/ Katherine M. Hikida_              ELIZABETH JOHNSON
KATHERINE M. HIKIDA                    ALICE W. YAO

12

MATTHEW J. BARRAGAN                    KATHERINE DUTCHER
MARGARET M. CHEN                       Trial Attorneys

13

ALEXANDRA YOUNG                        Disability Rights Section
Assistant United States Attorneys

14

Attorneys for Plaintiff
United States of America

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13